GANZ and another, Appellants, vs. MAIER, Respondent.

*November 8—December 7, 1954.*

For the appellants there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner*.

For the respondent there was a brief by *Richard H. Hammer* of Beaver Dam, attorney, and *George A. Hartman* of Juneau of counsel, and oral argument by *Mr. Hammer*.

FAIRCHILD, C. J. The question involved on this appeal is whether or not Verne Knoll was the agent of the plaintiffs in negotiating the loan made by the defendant, Rose Maier, and evidenced by the mortgage; in other words, which of the parties to this action is to be held to be the principal of an

agent "who betrayed his trust," as phrased in the opinion of the trial court.

The relationship between Knoll and appellants developed from a point of time just after the death of Gust Ganz, the husband of appellant Margaret Ganz, on August 13, 1949. Margaret Ganz was at that time left with a considerable estate to be probated, and for that reason she retained the services of Verne H. Knoll as her lawyer. We find in the testimony evidence that from the start of the probate proceedings in 1949 until the spring of 1950 conferences were held between appellants and Knoll, at which times Knoll advised them that "one of the farms would have to be sold in order to pay bills, attorneys fees, inheritance tax, and to pay off a mortgage held by a Mrs. Strehmel on part of the estate property." The relationship between Knoll and appellants had thus been developing for some time before the respondent Rose Maier was asked to lend the $7,000. At the time Knoll first interviewed Rose Maier, a relation of attorney and client existed between Knoll and the appellants.

William F. Ganz, one of the appellants, resided on one of the family farms and was, after his father's death, desirous of purchasing it. Originally he had intended to purchase the farm through a loan from a local bank. Knoll, as the attorney handling the family financial affairs, advised or induced William Ganz to make a loan of $7,000 from Rose Maier and to give her a first mortgage on the farm. The circumstances leading up to this arrangement were as follows: Rose Maier had a mortgage in the amount of some $3,900 on property of one Sumnicht. Knoll, on behalf of Sumnicht, came to her to ask her to increase the amount of that loan. She testified that this was the first time she had talked to Knoll, that she had never had any dealings with him before. She refused to lend any more money to Sumnichts because they had been slow in paying interest. It was through the

Sumnicht mortgage incident that Knoll learned Rose Maier had money to lend. When she refused to lend more to Sumnicht, Knoll told her that he had some clients who needed a loan and could give a good mortgage. His clients wanted $7,000, but Rose Maier presently had only $4,000 in cash. Knoll then offered "to liquidate" the Sumnicht mortgage if she would lend the appellants the $4,000 cash, plus $3,000 of the proceeds from the liquidated Sumnicht mortgage. She agreed to turn over the $4,000 cash when she got it from the bank and to pay the $3,000 later when the Sumnicht mortgage could be settled. On June 22, 1950, Knoll came to her home and delivered a check to her (dated June 13, 1950) in the sum of $910, drawn on the trust account of Verne H. Knoll. This sum represented the balance of the mortgage money over and above the $3,000 which was to be paid to the appellants. At that time he told her to come to his office on the same evening, and that the matter would be concluded and she would receive her mortgage.

There is some dispute as to when certain conferences took place and when the money was delivered by Rose Maier. Respondent stated on the trial that she gave the $4,000 to Knoll at her home, and that at that time she received in exchange a mortgage note signed by William F. Ganz and Margaret K. Ganz; but that Knoll said he would not give her the mortgage until the other $3,000 was paid. Rose Maier testified that in the evening of June 22, 1950, at the office of Verne Knoll, she met with Verne Knoll, William Ganz, and his mother, Margaret Ganz. She stated that Knoll handed her a check drawn on the Verne H. Knoll trust account for $3,000, made payable to Rose Maier and William Ganz. She indorsed the check and handed it back to Knoll, and he gave it to William Ganz to indorse. She remembered saying, "Well, you got all your money," and Ganz replied, "Yup, and you got a dang good mortgage." As she was

leaving the room, she heard Knoll tell William Ganz that the money belonged to his mother. She did not know what happened to the check after she left the room. The check drawn on his own account was found uncanceled among Knoll's papers after he had absconded. William Ganz admitted that the signature on the check was his signature, but that he did not remember signing it. He admitted that the signatures on the mortgage note and the mortgage were his. Margaret K. Ganz said that the signatures on the note and mortgage "looked like" hers, but that she did not remember signing.

Appellants relied upon Knoll. The mother, Margaret Ganz, said that she left the matter of the purchase price of the farm for Knoll to handle "because he was her lawyer and she trusted him." William Ganz repeatedly declared that they trusted Knoll. The very fact that they allowed Knoll to hold the money for the alleged purposes of taking out of it taxes, fees, payment on a mortgage on the homestead which the mother owed, and bills of other kinds leaves no room for doubt that they permitted Knoll to act as their agent. When William Ganz needed money for some pigs which he had bought, he went to Knoll to get it. Appellants accepted the numerous excuses made by Knoll for not turning over all the money to them. Shortly after Rose Maier received the mortgage, the original insurance policy was delivered to her with a mortgage clause payable to her for $7,000. William Ganz admitted that he knew the respondent was to have possession of the policy and that it contained a mortgage clause payable to her.

Furthermore, in November of 1950, William Ganz paid the interest then due on the entire $7,000 to Rose Maier. Up to May of 1951, when the second interest payment was due, he made no objections of any kind to Rose Maier. Nor did he ask for the $3,000 which was in his presence indorsed and

delivered to Knoll by Rose Maier and which he now claims to have no knowledge of.

From all the testimony we are convinced, as was the trial court, that appellants made Knoll their agent for the purpose of negotiating a loan from respondent and receiving for them the proceeds. The many manifestations of consent and recognition of the agency of Knoll by the appellants are of such cogency that his authority to act as their agent becomes apparent. It is considered that the intermediary, Knoll, was the agent of the borrower and not of the lender. 2 Am. Jur., Agency, p. 26, sec. 24; 2 C. J. S., Agency, p. 1047, sec. 23; see also *State Bank of Cornell v. Washington,* 184 Wis. 124, 197 N. W. 933. Under the doctrine recognized in *Frisch v. Shankwitz,* 209 Wis. 76, 244 N. W. 564, it must be said of the circumstances here under consideration that, unfortunate as the outcome of this action is, it is necessary to hold that the loss resulting from Knoll's unfaithfulness must fall upon those who intrusted to him the handling of the funds procured from the respondent.

There is no occasion for treating with the respondent's contention that appellants were estopped from denying that Knoll was their agent for purposes of securing the proceeds of the loans or from denying the validity of the mortgage to respondent.

*By the Court.*—Judgment affirmed.